IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 22-293 |
| | ) |
| AMIYA MANDAL | ) |

### MEMORANDUM OPINION and ORDER

Petitioner Amaya Mandal has filed a Petition to Terminate Supervised Release and Close Interest, wherein he requests early termination of his supervised release. ECF No. 2. The government has filed a response, opposing the motion, and Mr. Mandal has filed a Reply. ECF Nos. 5 and 6. For the reasons explained below the Petition will be denied.

**I.      Background**

Mr. Mandal was indicted in the Northern District of West Virginia on one count of Interstate Travel to Engage in Illicit Sexual Conduct in violation of 18 U.S.C. § 2423(b). His calculated guideline sentence range was 46 to 57 months' imprisonment. Mr. Mandal and the government, however, agreed that the appropriate sentence to be imposed on Mr. Mandal was 37 months' imprisonment to be followed by supervised release for Life. The resulting plea agreement was presented to the District Court pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). The District Court accepted the parties' agreement, and pursuant to Rule 11(c)(1)(C), the agreement was binding upon the Court. Accordingly, Mr. Mandal was sentenced to a below-guidelines sentence of 37 months' imprisonment to be followed by supervised release for Life. Mr. Mandal's term of supervision began when he was released from his term of imprisonment on February 7, 2013.

**II.     Applicable Law**

Early termination of a term of supervised release is authorized under 18 U.S.C. § 3583(e).  A court may terminate a term of supervised release and discharge the defendant after the expiration of one year of supervised release if the court "is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice."  18 U.S.C. § 3583(e)(1).  "The expansive phrases 'conduct of the defendant' and 'interest of justice' make clear that a district court enjoys discretion to consider a wide range of circumstances when determining whether to grant early termination."  United States v. Melvin, 978 F.3d 49, 52 (3d Cir. 2020) (citation omitted).  In making this determination the Court must consider the factors set forth in 18 U.S.C. § 3553(a)[1].  "District courts are not required to make specific findings of fact with respect to each of these factors; rather, 'a statement that [the district court] has considered the statutory factors is sufficient.'"  Melvin, 978 F.3d at 52–53 (3d Cir. 2020) (quoting United States v. Gammarano, 321 F.3d 311, 315–16 (2d Cir. 2003)).  Although new circumstances are not required in order terminate supervision early, the Third Circuit Court of Appeals has explained the "general rule" as that "if a sentence was 'sufficient, but not greater than necessary' when first pronounced, 18 U.S.C. § 3553(a), we would expect

---

[1] The factors under 18 U.S.C. § 3553(a) are:: (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide him with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentence and sentencing range established for the defendant's crimes; (4) pertinent policy statements issued by the United States Sentencing Commission; (5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (6) the need to provide restitution to any victims of the offense.  18 U.S.C. § 3553(a)(1), (2)(B)-(D) & (4)-(7).

that something will have changed in the interim that would justify an early end to a term of supervised release." Melvin, 978 F.3d at 53.[2]

### III. Mr. Mandal's Argument

Mr. Mandal argues that early termination of his supervised release is warranted for several reasons. He asserts that he has been fully compliant with the terms and conditions of his supervision, which has been confirmed by his Probation Officer in the Western District of Pennsylvania. Mr. Mandal emphasizes that he has had no incidents while on supervision and that he has remained crime free. Mr. Mandal also cites to the many positive effects he has had upon his family and community since his release from prison. Numerous letters have been submitted in support of Mr. Mandal, attesting to his good deeds, including his service to his family, neighbors, church, and community. The letters also expound on Mr. Mandal's remorse for his past criminal conduct and about his progress since release from incarceration. For example, Mr. Mandal "has participated in a mental health/sex offender treatment program and has complied with all program rules, requirements, and conditions of the treatment program, including submitting to polygraph testing to determine compliance." Pet. Term. Sup. Rel. 6 (ECF No. 2). In his Reply Brief, Mr. Mandal argues that early termination of his supervision is consistent with bi-partisan proposed legislation designed, in part, to require a more individualized approach to imposing supervised release, to reduce the punitive nature of supervised release, and create a presumption of early termination of supervised release for certain individuals, such as Mr. Mandal. Def. Reply, ECF No. 6 (citing the "Safer Supervision Act of 2022").

---

[2] To be clear, the Court acknowledges that, even in the absence of new circumstances, it has the discretion to terminate supervision early. United States v. Melvin, 978 F.3d 49, 53 (3d Cir. 2020).

A primary reason Mr. Mandal seeks early termination of his supervised release is due to the potential adverse effect that ongoing federal supervision may have upon his Naturalization application.  Presently, Mr. Mandal is a U.S. Lawful Permanent Resident.  At the time he entered into his plea agreement, Mr. Mandal avers that the defense and prosecution "contemplated that petitioner would be deported from the United States and therefore would not be subject to lifetime supervision in the United States."  Pet. Term. Sup. Release ¶ 21.  However, contrary to the parties' expectations, the Immigration Judge conducting Mr. Mandal's deportation proceedings determined that Mr. Mandal is <u>not</u> deportable.  Pet. Term. Sup. Release 21.  Mr. Mandal argues that this sequence of events "has arguably placed him in a more punitive set of circumstances than all parties envisaged."  Pet. Term. Sup. Release 21.  An immigration attorney retained to assess Mr. Mandal's eligibility for Naturalization provides the following opinion:

> An adjudicating officer with the U.S. Citizenship and Immigration Services may not approve a naturalization application while the applicant is on probation, parole, or under a suspended sentence under 8 CFR 316.10(c)(l) based on the Good Moral Character requirement.  Due to Mr. Mandal's Supervised Release, he arguably would not meet the Good Moral Character grounds to qualify for U.S. Naturalization.

Pet. Term. Sup. Release 14 (quoting Letter from Mark D. Hatley, Esquire, attached as Exhibit F).  Mr. Mandal also cites additional adverse effects he is subject to because he is on lifetime supervised release.  Mr. Mandal explains that his supervised release negatively impacts his ability to visit his family in India and his ability to successfully return to the United States.  Pet. Term. Sup. Release ¶ 20.  Mr. Mandal also cites other adverse consequences that would apply equally to any defendant on supervised release in a similar situation.  Pet. Term. Sup. Release ¶¶ 18-19.

4

## IV.     Discussion

The Court acknowledges that Mr. Mandal is not only compliant with the terms and conditions of his supervision; but, he is also engaging in positive conduct that benefits his wife, family, church, and the greater community.  However, the Court expects that all defendants on supervised release will successfully comply with the conditions of supervision.  Thus, compliance alone is unlikely to be sufficient to warrant the early termination of supervised release in most cases.  This is a case in which supervision appears to be working properly.  As the government notes, while under supervision Mr. Mandal is gainfully employed, he is able to care for his ailing wife, he participates in his children's lives, he practices his religion, he is engaged in the community, and he performs charitable works.  Govt Resp. 7.

The government argues that Mr. Mandal's Petition for early termination of supervised release should be denied.  The West Virginia Assistant United States Attorney who prosecuted this case has informed counsel for Mr. Mandal that he opposes termination of supervision.[3]  Mr. Mandal was convicted of a serious offense: interstate travel to engage in illicit sexual conduct with a minor.  The parties' plea negotiations not only considered the serious nature of the crime but also concluded that lifetime supervised release was appropriate in this case.  There is no evidence that the parties negotiated a punishment of lifetime supervision based upon the mutual assumption that Mr. Mandal would be deported such that he would not be subject to the actual lifetime supervision.  The sentencing Judge accepted the

---

[3] The United States Probation Officer presently supervising Mr. Mandal has not stated a position on the Petition; however, defense counsel states that Mr. Mandal's Probation Officers have indicated to Mr. Mandal that he should petition for early termination.  Def. Reply 3.

Rule 11(c)(1)(C) agreement, and indicated that, in light of the section 3553(a) factors, he believed that the parties' 11(c)(1)(C) plea agreement was appropriate.  By accepting the agreement, the sentencing Judge was legally bound to impose a term of supervised release for Life.  Thus, the parties entered into a bargained-for contract, accepted by the Judge, and both sides expected it would be enforced.  "While the Court may have the authority to upset a carefully crafted and approved bargain," it declines to do so in this case. United States v. Starkey, No. 2:14-CR-90-NR, 2022 WL 5169824, at *1 (W.D. Pa. Oct. 5, 2022) (denying petition for early termination of supervised release that had been negotiated and accepted in a Rule 11(c)(1)(C) plea agreement).

       The Court acknowledges that supervised release presents burdens and barriers for defendants.  However, the Court cannot conclude that requiring Mr. Mandal to comply with the conditions of supervision is either too harsh or inappropriately tailored to serve general rehabilitative, deterrence, protection of the public, and punishment goals of sentencing, when considering the nature of the crime he committed.  The Court notes that the resolution of the criminal offense in this case, 37 months' imprisonment, and lifetime supervision, did not directly determine Mr. Mandal's ability to become a Naturalized citizen.  Such naturalization consequences, if any, are derived from the application of federal immigration law.  To reiterate, the fact that Mr. Mandal is under lifetime supervision is a consequence of his criminal offense and the subsequent plea negotiations and Rule 11(c)(1)(C) plea agreement that resulted in a guaranteed below guidelines sentence for him.

## V.     Conclusion

After reviewing the factors to be considered for early termination of supervised release as set forth in 18 U.S.C. § 3583(e)(1), and the factors listed under section 3553(a), the Court finds that it is not in the interest of justice to terminate Mr. Mandal's supervised release at this time.

Accordingly, the following Order is hereby entered.

AND NOW, to-wit, this 30th day of January 2023, it is hereby ORDERED that Amiya Mandal's Petition to Terminate Supervised Release and Close Interest, ECF No. 2, is DENIED.

_____
Marilyn J. Horan